FOLEY AND LARDNER LLP
Anne B. Sekel
90 Park Avenue
New York, NY 10016-1314
212.338.3417 (Direct)
212.687.2329 (Facsimile)
asekel@foley.com

Trent M. Johnson (of counsel)
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
414.319.7303 (Direct)
414.297.4900 (Facsimile)
tjohnson@foley.com

*Counsel for Plaintiff Mitchell Repair Information Company, LLC*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY (TRENTON)**

| | |
|---|---|
| **MITCHELL REPAIR INFORMATION COMPANY, LLC,** | |
| Plaintiff, | Case No.  3:12-cv-04698-PGS-LHG |
| vs. | *Electronically Filed Document* |
| **GARDEN STATE TRUCK & AUTO, INC.,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF DAMAGES**

**TABLE OF CONTENTS**

**UNDISPUTED FACTS** ........................................................................................... 1

    **I.**    **MRIC's Copyrighted Automotive Software Products** ....................... 1

    **II.**   **Garden State's Willful Violation of MRIC's Copyrights for Mitchell On-Demand** ........................................................................................ 3

    **III.**  **MRIC's Filing and Service of the Complaint and Motion for Clerk's Default** ................................................................................................. 5

**ARGUMENT** ........................................................................................................... 5

    **I.**    **Garden State's Refusal to Respond to The Complaint Establishes Liability.** ............................................................................................... 5

    **II.**   **The Court Should Grant MRIC Injunctive Relief, Damages in the Statutory Maximum Amount, and Attorneys' Fees.** .......................... 6

    **III.**  **MRIC is Entitled Costs, Including Attorneys' Fees** ......................... 7

**CONCLUSION** ....................................................................................................... 8

# **TABLE OF AUTHORITIES**

**CASES**

*Axact (PVT), Ltd. v. Student Network Res., Inc.*,
    No. 07-5491 (FLW), 2008 U.S. Dist. LEXIS 86455 (D.N.J. Oct. 20, 2008) ......................... 5-7

*Broadcast Music, Inc. v. Golden Horse Inn Corp.*,
    709 F. Supp. 580 (E.D. Pa. 1989) ...................................................................................... 6

*Comdyne I, Inc. v. Corbin*,
    908 F.2d 1142 (3d Cir. 1990) ............................................................................................ 5

*Gestaped.com v. Cangemi*,
    188 F. Supp. 2d 398 (S.D.N.Y 2002) ................................................................................ 6

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*,
    149 F.3d 987 (9th Cir. 1998), cert. denied, 525 U.S. 1141, 119 S. Ct. 1032, L. Ed.2d
    41 (1999) ......................................................................................................................... 6

*Rural Telephone Service Co. v. Fiest Pubs, Inc.*,
    No. 83-4086-R, 1992 U.S. Dist. LEXIS 10289 (D. Kan. June 18, 1992) ............................. 7

*Yash Raj Films (USA) Inc. v. Sur Sangeet Video Electronics Inc.*,
    No. 06-3968 (SRC), 2008 U.S. Dist. LEXIS 14951 (D.N.J. Feb. 28, 2008) ...................... 6-7

**STATUTES, RULES & REGULATIONS**

17 U.S.C. § 101 *et seq*. ............................................................................................................. 3

17 U.S.C. § 102 ........................................................................................................................ 3

17 U.S.C. §§ 502, 504 ............................................................................................................... 1

17 U.S.C. §§ 502, 504(c)(2), 505 .............................................................................................. 6

17 U.S.C. § 505 ........................................................................................................................ 7

Fed. R. Civ. P. 12 ..................................................................................................................... 5

Fed. R. Civ. P. 55 ..................................................................................................................... 5

Fed. R. Civ. P. 55(b) ................................................................................................................ 1

Plaintiff Mitchell Repair Information Company, LLC, ("MRIC"), by its attorneys, Foley & Lardner LLP and pursuant to Fed. R. Civ. P. 55(b), hereby moves the Court for an order of default judgment to be entered against Garden State Truck & Auto, Inc. ("Garden State"). Garden State has failed to answer or otherwise respond to MRIC's complaint, and the Clerk has therefore entered an order of default. (Dkt. No. 9.) In addition, as a result of Garden State's willful infringement of MRIC's copyright, MRIC requests injunctive relief and damages in the amount of $150,000, or in such amount that the Court deems just and proper in order to sufficiently deter future copyright violations by Garden State and others. *See* 17 U.S.C. §§ 502, 504. MRIC also requests its attorneys' fees and costs pursuant to law.

In addition to the pleadings and supporting papers already filed, this motion is supported by: 1) the Declaration of Anne Sekel and attached exhibits; 2) the Declaration of Trent Johnson and attached exhibits; and 3) the Declaration of Peter O'Meara and attached exhibits. The declarations of Anne Sekel, Trent Johnson and Peter O'Meara are attached hereto and marked as **Composite Exhibit 1**.

## UNDISPUTED FACTS

### I.    MRIC's Copyrighted Automotive Software Products

MRIC is – and for nearly eighty years has been – one of the leading providers of informational products to the automotive industry. (Compl. ¶ 4; *see* Dkt. No. 1) MRIC currently publishes more than 30 informational and service products, primarily in electronic formats, which it then markets to independent automotive repair shops, service stations, automobile dealerships, educational institutions, and libraries worldwide. (*Id*.)  MRIC's informational products cover a range of industry-specific topics, including, without limitation, diagnosing and estimating the costs of automotive repairs, conducting automotive repairs, and managing automotive repair facilities. (*Id*.)

Prior to February 7, 2000, MRIC created an original computer software program designed to assist automotive technicians in conducting diagnostic and repair work, which it called "Mitchell On-Demand: Computerized Repair Information System" ("Mitchell On-Demand"). (Compl. ¶ 5.) Over the years, MRIC has continued to develop "Mitchell On-Demand," which currently includes a suite of software products which can be used individually or collectively. One of the individual software products included in the "Mitchell On-Demand" lineup is called "Manager" (including "ManagerPlus"). (*Id.*)

MRIC markets "Mitchell On-Demand" and related products, in both compact disc (CD) and digital video disc (DVD) formats, or by permitting an end user, i.e. purchaser, to access the "Mitchell On-Demand" online. (Compl. ¶ 6.) Updated versions of "Mitchell On-Demand" are created on a quarterly basis. (*Id.*)

Since it first began to market "Mitchell On-Demand," MRIC has required purchasers to execute an end-user license agreement ("EULA") prior to installing and/or accessing the software. (Compl. ¶ 7.) Under the terms of the EULA, purchasers are granted a *non-transferable* license to use the software they purchase. (*Id.*)[1] In addition to signing the EULA prior to installation, purchasers of "Mitchell On-Demand" are required to assent to the terms of a License Agreement through an on-screen dialogue box prior to using the software. (*Id.*)[2]

---

[1] A true and correct copy of the EULA form currently used by MRIC in connection with its sales of "Mitchell On-Demand" was attached to the Complaint as Exhibit 1. (*See* Dkt. No. 1.)

[2] A true and correct printout copy of the on-screen License Agreement and attendant dialogue box was attached to the Complaint as Exhibit 2. (*See* Dkt. No. 1.)

"Mitchell On-Demand," including "Manager" and "ManagerPlus", are "computer programs" within the meaning of 17 U.S.C. § 101, and constitute copyrightable subject matter under 17 U.S.C. § 102. (Compl. ¶ 8.)

MRIC has secured the exclusive rights and privileges in and to the copyright for "Mitchell On-Demand." (Compl. ¶ 9.)

MRIC has received a Certificate of Copyright Registration Number TX-5-104-618 (effective date February 7, 2000) from Register of Copyrights in the United States Copyright Office for the 1999 version of the software. (Compl. ¶ 10.)[3]  At all times since its creation of "Mitchell On-Demand," MRIC has complied with all federal laws governing copyrights, including the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, and it is currently the owner of all rights, title, and interests in and to the copyright for "Mitchell On-Demand." (Compl. ¶ 11.)

## II. Garden State's Willful Violation of MRIC's Copyrights for Mitchell On-Demand

On March 5, 2012, Ed Schumann, an independent sales representative for MRIC, visited Garden State for the purpose of selling MRIC's automotive software. (Compl. ¶ 12; Schumann Decl. ¶¶ 2, 4; *see* Dkt. No. 1, Attachment 8.)  At Garden State, Schumann spoke with a service technician named Nick, who, after learning the purpose of Schumann's visit, stated that Garden State already had MRIC's product, Mitchell On-Demand, including ManagerPlus, on its system.  (*Id*; Schumann Decl. ¶ 4.)  Nick pointed to a computer screen that showed the ManagerPlus program running.  (*Id.*)  Schumann told Nick that Garden State did not have a license for Mitchell On-Demand, that their use violated MRIC's copyrights, and that Garden

---

[3] True and correct copies of MRIC's Certificates of Copyright Registration for the suite of software products included in "Mitchell On-Demand" were attached to the Complaint as Exhibit 3. (*See* Dkt. No. 1.)

State would need to either purchase an authorized version of Mitchell On-Demand or remove it from their computer system. (*Id*.) Nick said that he would talk to the owner, Pete, about purchasing a license. (*Id*.) Schumann then left Garden State. Later, Schumann confirmed with MRIC's corporate office that Garden State did not have a license, and informed his regional manager, Charles Zerambo, of Garden State's unauthorized use of Mitchell On-Demand. (*Id*; Schumann Decl. ¶ 5.)

On March 8, 2012, counsel for MRIC, Trent Johnson, sent a demand letter to Garden State by certified mail, return receipt. (Compl. ¶ 14.)[4] The letter was returned as unclaimed. (*Id*.) On April 5, 2012, Johnson sent an email to Garden State with the same demand letter attached. (Compl. ¶ 15.)[5] Johnson received an email response April 7, 2012 that said "lol [laughing out loud] fuck off." (*Id*.)

In effort to determine whether Garden State continued to use Mitchell On-Demand, on May 22, 2012, Zerambo brought his vehicle to Garden State for an oil and filter change. (Compl. ¶ 16; Zerambo Decl. ¶ 4; *see* Dkt. No. 1, Attachment 7.) Zerambo saw the technician use the ManagerPlus program to perform his transaction and generate his invoice. (*Id*; Zerambo Decl. ¶ 4, Ex. A.) Zerambo took a digital photograph of the computer screen the technician was using, showing that ManagerPlus was running. (*Id*; Zerambo Decl. ¶ 4, Ex. B.) Later, Zerambo sent Schumann a copy of the invoice Zerambo received for his oil change and Schumann identified it as an invoice generated by Mitchell On-Demand software. (*Id*.; Schumann Decl. ¶ 6.)

---

[4] A true and correct copy of Johnson's March 8, 2012 letter to Garden State was attached to the Complaint as Exhibit 4.

[5] A true and correct copy of Johnson's April 7, 2012 email to Garden State, and Garden State's response to that email, was attached to the Complaint as Exhibit 5.

4843-1237-8897.2

### III.  MRIC's Filing and Service of the Complaint and Motion for Clerk's Default

On July 26, 2012, MRIC filed its complaint (and supporting materials) against Garden State, alleging that Garden State had willfully violated MRIC's copyright in Mitchell On-Demand, and seeking injunctive relief, damages and attorneys' fees.  (Dkt. No. 1.)

Garden State was served with the Complaint on August 15, 2012.  (Dkt. Nos. 6-7.)  Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Garden State had until September 5, 2012 to answer or otherwise respond to the Complaint, but failed to do so. Accordingly, on September 11, 2012, MRIC moved for entry of a Clerk's Default against Garden State pursuant to Fed. R. Civ. P. 55, which the Clerk entered the same day.  (Dkt. No. 9.) As a result of the Clerk's entry of default, MRIC now seeks entry of default judgment against Garden State, and an award of injunctive relief, damages and attorneys' fees.

### ARGUMENT

### I.  Garden State's Refusal to Respond to The Complaint Establishes Liability.

"[W]hen a defendant is in default, the Court treats all pleadings and allegations of the [plaintiff] as true."  *Axact (PVT), Ltd. v. Student Network Res., Inc.*, No. 07-5491 (FLW), 2008 U.S. Dist. LEXIS 86455, at *1 n.1 (D.N.J. Oct. 20, 2008) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

Here, as a consequence of Garden State's outright refusal to respond to the Complaint, liability has been established, and MRIC is entitled to default judgment against Garden State.  The only issue for the Court to decide is the relief, including the amount of damages, to be awarded to MRIC.  As set forth below, in addition to injunctive relief, MRIC urges the Court to impose the damages in the statutory maximum amount of $30,000, and further increase that amount to the extent that Court deems appropriate in light of Garden State's willful disregard for MRIC's copyrights.

5

## II.     The Court Should Grant MRIC Injunctive Relief, Damages in the Statutory Maximum Amount, and Attorneys' Fees.

As remedies for copyright infringement, the Copyright Act generally provides for (1) injunctive relief, (2) actual damages or, in the alternative, statutory damages between $750 and $30,000 – which the Court has discretion to increase to $150,000 if infringement is willful – and (3) attorneys' fees and costs.  *See* 17 U.S.C. §§ 502, 504(c)(2), 505.

When determining the amount of statutory damages, district courts need not follow any rigid formula—the Court enjoys wide discretion to set appropriate damages.  *Yash Raj Films (USA) Inc. v. Sur Sangeet Video Elecs. Inc.*, No. 06-3968 (SRC), 2008 U.S. Dist. LEXIS 14951, at *10-11 (D.N.J. Feb. 28, 2008) (awarding plaintiff $10,000 per infringing cinematic work for a total award of $1.1 million).  When setting the amount of statutory damages, a court can consider "(1) the state of mind of the defendant with respect to the infringing activity . . . (2) the need to deter future infringing activity; (3) the profits reaped by the defendants in connection with the infringement; and (4) the revenue lost by the plaintiff as a result of said infringement.  *Id.* at *11-12 (citing *Getaped.com v. Cangemi*, 188 F. Supp. 2d 398, 403 (S.D.N.Y. 2002); *Broadcast Music, Inc. v. Golden Horse Inn Corp.*, 709 F. Supp. 580, 581 (E.D. Pa. 1989)).  However, "[a] party need not prove actual damages to be entitled to an award of statutory damages."  *Axact*, 2008 U.S. Dist. LEXIS 86455, at *6 (citing *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998)), cert. denied, 525 U.S. 1141, 119 S. Ct. 1032, 143 L. Ed. 2d 41 (1999)).  Indeed, in cases of default, a defendant's unilateral decision not to respond to the complaint forecloses a plaintiff's opportunity to take discovery and to actually prove damages.

In this case, Garden State clearly knew it was violating MRIC's copyrights.  Not only are notices regarding MRIC's copyrights presented when installing Mitchell On-Demand

6

(Compl. ¶ 7), both Mr. Schumann, and MRIC's attorney, Mr. Johnson, repeatedly informed Garden State personnel that their use of Mitchell On-Demand without a valid license violated the law. But, instead of agreeing to discontinue such illicit use of Mitchell On-Demand, Garden State told MRIC to "fuck off."

Garden State is not above the law, and the Court should not stand for Garden State's complete disregard for the federal copyrights. In this case, an award of damages in the statutory maximum of $30,000 is appropriate. Moreover, the Court should exercise its discretion under the Copyright Act and further increase the damages amount to the extent the Court deems just and appropriate under the circumstances. Doing so would achieve the twin aims of compensating MRIC for its injury, demonstrating to would-be unauthorized users that such conduct will not be tolerated. *See Axact*, 2008 U.S. Dist. LEXIS 86455, at \*7 (awarded the party prevailing on default judgment the statutory maximum of $150,000 for each of two copyright violations). Indeed, Garden State's outright hostility to copyright law is the very sort of wrong that Copyright Act's exemplary damages provision is designed to address. Though Garden State knew it was infringing on MRIC's copyright, it persisted even after MRIC asked it to stop, and flaunted its willful violation. A stiff damages award, including exemplary damages, would serve to deter individuals from thumb their noses at the copyright law.

### III. MRIC is Entitled Costs, Including Attorneys' Fees

Finally, MRIC is also entitled to recover the costs of the present action, including attorneys' fees. *See* 17 U.S.C. § 505. Indeed, ordinarily prevailing parties in copyright actions are awarded attorneys' fees. *See Axact*, 2008 U.S. Dist. LEXIS 86455, at \*9 (citing *Rural Tel. Serv. Co. v. Fiest Pubs., Inc.*, No. 83-4086-R, 1992 U.S. Dist. LEXIS 10289, at \*6-7 (D. Kan. June 18, 1992)). In this case, a willful violation has been demonstrated, making the award of fees even more fitting. *Yash Raj Films*, 2008 U.S. Dist. LEXIS 14951, at \*13.

7

In this action, MRIC has incurred total attorneys' fees of $14,577. *See* **Composite Exhibit 1**. This includes 6.9 hours of work by Senior Counsel Anne Sekel, at $490 per hour, 21 hours of work by Senior Counsel Trent Johnson, at $385 per hour, and 10.2 hours of work by Associate Peter O'Meara at $305 per hour. *Id*. The attorneys' rates and number of hours are supported by their attached affidavits. *Id*. Considering the amount of time expended and the attorneys' rates, the sum of $14,577 is reasonable.

## CONCLUSION

Based on the foregoing, MRIC requests that this Court enter a judgment of default against Garden State and in favor of MRIC, and award to MRIC injunctive relief, damages in the amount of $30,000 increased in an amount the Court deems appropriate as a consequence of Garden State's willful conduct, and attorneys' fees in the amount of $14,577, plus any additional attorneys' fees and costs that may be incurred in an effort to collect this judgment and which may be added to the judgment by this Court at any time upon showing by MRIC that such fees and costs have actually been incurred. However, to the extent that the Court is not inclined to award damages in the amount requested above, MRIC requests the opportunity to further brief the issue. A proposed Order for Default Judgment and Judgment is attached hereto as **Exhibit 2**.

Dated: November 14, 2012

               By:  *s/Anne B. Sekel*
                    Anne B. Sekel
                    Foley and Lardner LLP
                    90 Park Avenue
                    New York, NY 10016-1314
                    212.338.3417 (Direct)
                    212.687.2329 (Facsimile)
                    asekel@foley.com

OF COUNSEL:
Trent M. Johnson
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
414.319.7303 (Direct)
414.297.4900 (Facsimile)
tjohnson@foley.com